IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America

        v.                        Case No. 1:25-MJ-116

Dwayne Taylor

**Defendant's Appeal of Detention Order**

      Dwayne Taylor, through counsel, appeals the magistrate's decision of July 10, 2025, ordering him detained pending trial, pursuant to 18 U.S.C. 3145(b). He asks the court to schedule a hearing on this motion promptly. Undersigned counsel is scheduled to be in a jury trial with the court on August 14 and 15; however, counsel is able to conduct this hearing during a lunchbreak if the court's schedule accommodates. Mindful of the court's time, counsel expects a hearing on this motion to be brief.

      Dwayne Taylor is charged with a single, non-violent, possessory charge of having a firearm. The firearm was a five-shot revolver, which was safely placed in his backpack. The firearm was not equipped with any devices that make it more lethal, such as a large capacity magazine, a laser sight, or a giggle switch. Indeed, given the type of firearm, it cannot be outfitted with most of these devices. He neither wielded nor brandished the firearm. He did not threaten anyone with the firearm; indeed, he was calm, cooperative, and he waited for the police to arrest him after the firearm was discovered. Only in a theoretical sense does Taylor's alleged crime pose any danger to the community. Focusing on the facts of this case, as opposed to hypothetical ruminations about potential actions neither taken nor suggested were likely to occur, and the law—which presumes Taylor's release—should result in Taylor being released on conditions pending his trial.

Taylor came into possession of the firearm in his backpack because he took it from a young person in the district. Taylor, having spent most of his life in prison because of a senseless act he committed when he was a juvenile, wanted to help save lives. He took a firearm off the streets. Of course, he could have and failed to promptly provide that firearm to law enforcement. But nothing about the way in which he was arrested demonstrates he had any intention of using the firearm. He calmly told the police he forgot to take it out of his bag in the morning before leaving for workforce training. He did not have a holster to allow him to easily wield the firearm, nor was it stored on his person. As far as possessory offenses go, this one demonstrates the least amount of potential danger to the public. His actions were consistent with his actions when he was incarcerated, where he "mentor[ed] young men . . . to pass on the lesson that it only take[s] a split second to destroy the function of someone's life . . . ." *See* Exhibit 1 at 6.

Although this charge is serious (as is every federal felony offense), this case lacks nearly every aggravating circumstance attendant to most felon in possession cases in the district. Taylor's guidelines are relatively low compared to most, resulting in an advisory sentencing guideline range of 27 – 33 months if he accepts responsibility. His guidelines are only that high because he has a prior conviction for a crime of violence—already something counted in his criminal history calculation. Were he not to be punished twice for that conviction, his base offense level would be fourteen, not twenty. With acceptance credit, that offense level would yield a guideline recommendation of 12 – 18 months. Clearly, as far as 922(g) cases go, this is one of the least serious.

True, the government's evidence in the case is strong, and this factor weighs in favor of detention. However, nearly every 922(g) case brought in federal court is strong, and many defendants are released on conditions pending their trials. This is not a crime that carries a presumption of detention, and the court should not treat it as such.

Contrary to the government's claims, Taylor's history and characteristics support release. Apart from a senseless act of violence he committed when still a juvenile more than thirty years ago, he has not been charged with engaging in any violent or criminal activity. He served twenty-seven years in prison, and he only obtained ten disciplinary violations—most of which were minimal. Indeed, in ordering his early release from prison, a Superior Court judge found that his disciplinary record was remarkable in how few violations were reported. *See* Exhibit 1 at 5 – 6 ("it seems that the defendant has an unusually good history of behavior at the institution at which he has been residing"). Rather than busying himself with violence or gangs, Taylor "spent thousands of hours obtaining his GED and [completed] over 60 professional and life-skills certifications, maintained consistent employment, and demonstrated commendable leadership among the inmates at his Bureau of Prisons facility." *See* Exhibit 1 at 2 – 3. Taylor's prison record demonstrates that he has and can be trusted to safely live as a member of his community.

The Magistrate relied too heavily on the government's argument that Taylor's prior crime demonstrates he poses a current danger to the community. But as the Superior Court noted, Taylor's "neuro-developmental immaturity at the time he committed the offense was exacerbated by his tumultuous home life." *See* Exhibit 1 at 7. In contrast, "during his time in prison[,] he has developed to a point that he is now in good mental health and demonstrates a level of emotional and psychological maturity sufficient to support his successful re-entry to society, and that there exists a low probability he would commit future acts of violence that would constitute a serious threat to society." *See* Exhibit 1 at 7 – 8.

Taylor's performance while on supervised release following his sentence reduction also demonstrates that he can safely be released while reasonably assuring the safety of the community. He completed nearly four years of supervision without, to counsel's knowledge,

even a single alleged technical violation of release. While released, he continued his rehabilitative efforts and was working to get a job performing security. Upon information and belief, he obtained his security license shortly before his arrest, and he had been completing workforce training through Project Empowerment. Focusing primarily on a crime committed in the nineties ignores the Bail Reform Act's requirement that the court make a forward-looking decision in fashioning release or detention orders. Indeed, focusing primarily on that crime ignores Taylor's positive efforts to rehabilitate himself and successfully reenter society as a productive citizen. That behavior, much more so than an act committed more than thirty-years ago, shows that he can be released while reasonably assuring the safety of the community.

Finally, even though the law presumes Taylor's release on his own recognizance, he is proposing to be released to the care of a third-party custodian and his fiancé, Juanita Lyles. Ms. Lyles is a healthcare worker with a stable job. The two share one child in common, and Taylor acts as a stepfather to Jaunita's younger son. The two would live together at Ms. Lyle's residence, where she resides only with her children. Before his arrest, Taylor was staying at his own residence, but the two were making plans to move in together. Ms. Lyles described Taylor as a "wonderful father," and the "best" that she could dream to find in a partner. Pretrial Services has screened Ms. Lyles and found her an acceptable third-party custodian.

## Conclusion

Dwayne Taylor asks this court to revoke the magistrate's order of his detention pending trial, pursuant to 18 U.S.C. 3145(b). The Magistrate focused too heavily on a crime Taylor committed more than thirty years ago and on hypothetical ways in which Taylor's release could endanger the public. But the Court ignored or did not give sufficient weight to Taylor's last thirty years of rehabilitative efforts which demonstrate that he can clearly be

released while reasonably assuring the safety of the community. This court should revoke the magistrate's detention order and order that Taylor be released on conditions pending his trial.

Respectfully submitted,

/s/ Benjamin Schiffelbein

625 Indiana Ave NW, Ste 550
Washington, DC 20004
Benjamin_Schiffelbein@fd.org
(202)208-7500